**BARBER–COLMAN COMPANY,**
Plaintiff,

v.

**Commissioner Manuel BARBOSA, Chief Commissioner of the Illinois Human Rights Commission; Director Rose Mary Bombela, Director of the Illinois Department of Human Rights; and Paul S. Combs, Defendants.**

No. 96 C 50064.

United States District Court,
N.D. Illinois,
Western Division.

Sept. 27, 1996.

Ellen B. Lynch, James Pirages, Hinshaw & Culbertson, Rockford, IL, for Plaintiff.

Gary M. Griffin, Courtnay C. O'Connell, Illinois Attorney General's Office, Chicago, IL, William J. Provenzano & Associates, Libertyville, IL, for Defendants.

## MEMORANDUM OPINION AND ORDER

REINHARD, District Judge.

### INTRODUCTION

Plaintiff, Barbara–Colman Co., filed an amended complaint against defendants, Manuel Barbosa, Chief Commissioner of the Illinois Human Rights Commission. (HRC), Rose Mary Bombela, Director of the Illinois Department of Human Rights (IDHR), and Paul S. Combs, seeking, pursuant to 28 U.S.C. § 2201, a declaratory judgment that the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1001 *et seq.*, preempts Combs' action before the HRC in which he claims Barber–Colman discriminated against him on the basis of age in violation of section 2–102(A) of the Illinois Human Rights Act (Act), 775 ILCS 5/2–102(A), when it refused to provide him severance pay upon his discharge from Barber–Colman's employment. Defendants, excepting Combs, have moved to dismiss the amended complaint.[1]

### FACTS [2]

Combs filed a charge with the IDHR on July 7, 1992 which, in turn, filed a complaint with the HRC on behalf of Combs. That complaint alleges that Combs was 53 years old at the time Barber–Colman discharged him. Prior to his discharge, he had worked at Barber–Colman since 1963 and had performed his employment duties in a manner

---

1. Plaintiffs original complaint only named as defendants the Illinois Human Rights Commission, the Illinois Department of Human Rights, the State of Illinois and Combs. Plaintiffs later amended their complaint and, at that time, changed the defendants to Barbosa, as commissioner of the HRC, and Bombela, as director of IDHR. The amended complaint continues to name Combs as a defendant. The amended complaint eliminates the IDHR, the HRC and the state as defendants. It does not name any of them in the caption or the introductory paragraph. Nonetheless, the motion to dismiss is brought on behalf of the HRC and IDHR by the Illinois Attorney General. The court will consider the motion to be brought on behalf of Bombela and Barbosa as the attorney general would be the proper representative of these defendants and the substantive issues raised by the motion would be the same had the HRC, IDHR and state been named as defendants therein.

2. The amended complaint includes allegations and various exhibits which provide the factual basis for this court's assessment of defendants' motion to dismiss.

acceptable to Barber–Colman. On approximately January 24, 1992, Combs was discharged for the stated reason that he wilfully failed to meet his job requirements and misused company property and other employees' time. Combs was denied severance pay because of Barber–Colman's stated reason that he was not eligible for severance because of the nature of his discharge. The HRC complaint further alleges that three of Combs' fellow workers, all of whom were under 40, were terminated for similar reasons as Combs but were not denied severance pay. Finally, the HRC complaint alleges that Barber–Colman violated section 2–102(A) of the Act by discriminating against him because of his age.

Barber–Colman filed a motion to dismiss before the HRC, contending that Combs' action under section 2–102(A) is preempted by ERISA because the allegations pertaining to a violation of section 2–102(A) relate to Barber–Colman's employee severance plan. An administrative law judge (ALJ) issued a recommended order and decision, finding that the severance plan is an employee welfare benefit plan under ERISA and that, because the HRC's adjudication of Combs' claim would require it to determine his eligibility for severance pay under the plan, ERISA preempts the claim. Thus, the ALJ recommended that Barber–Colman's motion to dismiss be granted.

After considering the recommended order and decision, a three-member panel of the HRC refused to accept it and denied Barber–Colman's motion to dismiss. In doing so, the panel ruled, relying principally on *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983) and *Babcock & Wilcox v. Illinois Dept. of Human Rights*, 189 Ill.App.3d 827, 137 Ill.Dec. 146, 545 N.E.2d 799 (2d Dist.1989), that because Combs' action under section 2–102(A) raises an age discrimination claim also covered by

the Age Discrimination in Employment Act of 1967 (ADEA), 29 U.S.C. § 621 *et seq.*, ERISA does not preempt the claim. A subsequent petition for rehearing before the full HRC by Barber–Colman was denied by the HRC.

Barber–Colman, in turn, filed its claim for declaratory relief in this court.[3] In its amended complaint, it alleges that ERISA preempts the section 2–102(A) claim before the HRC because that claim relates to an employee benefit plan and section 514(a) of ERISA preempts all state laws that so relate.

Defendants, in their motion to dismiss, contend that, because Combs' section 2–102(A) claim is based on conduct equally actionable under the ADEA, section 514(d) of ERISA exempts his claim from preemption. Barber–Colman responds that the Act and the ADEA are different because the Act, unlike the ADEA, has no corresponding "bona fide employee benefit plan" exception and, therefore, the Act prohibits actions that are otherwise legal under the ADEA.

## DISCUSSION

Dismissal of a complaint is appropriate only if it is clear the plaintiff can prove no set of facts consistent with the complaint which would entitle him to relief. *Jones v. General Elec. Co.*, 87 F.3d 209, 211 (7th Cir.1996). In evaluating the complaint, the court accepts as true all well-pleaded factual allegations and draws all reasonable inferences in favor of the plaintiff. *Hager v. City of West Peoria*, 84 F.3d 865, 868–69 (7th Cir.1996).

The key case in disposing of the motion to dismiss, and the one relied on most heavily by defendants, is *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). In that case, the Supreme Court addressed the issue of ERISA preemption of

---

**3.** Barber–Colman's attempt to circumvent the ruling of the HRC by proceeding in a federal district court in an effort to obtain a declaratory judgment concerning an issue of federal law presents an interesting issue of abstention. *See Wilton v. Seven Falls Co.*, — U.S. —, —— ——, 115 S.Ct. 2137, 2140–44, 132 L.Ed.2d 214 (1995) (interpreting *Brillhart v. Excess Ins. Co.*, 316 U.S. 491, 62 S.Ct. 1173, 86 L.Ed. 1620

(1942)); *see also Youell v. Exxon Corp.*, 74 F.3d 373 (2d Cir.1996) (applying *Brillhart* upon remand from Supreme Court and holding that abstention is improper where novel question of federal law at issue). Because defendants have not sought such relief here, the court has no occasion to consider whether abstention would be appropriate under these circumstances.

a claim for pregnancy discrimination brought under New York's Human Rights Law where such discrimination was not forbidden by Title VII of the Civil Rights Act of 1964. After first concluding that ERISA preemption under section 514(a) applied to the state law claims, the Supreme Court next considered whether any of the "narrow exceptions" to section 514(a) saved the law from preemption. *Id.* at 100, 103 S.Ct. at 2902.

Appellants in that case, like defendants here, relied on section 514(d) which provides that section 514(a) shall not "be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." *Id.* at 100-01, 103 S.Ct. at 2902. The Court began its analysis by noting that state law obviously plays a significant role in the enforcement of Title VII. *Id.* at 101, 103 S.Ct. at 2902. Pointing to the provisions of Title VII that expressly preserve nonconflicting state laws and require recourse to available state administrative remedies, the Court explained that preemption of the New York law at issue would impair Title VII to the extent the state law provides a means of enforcing Title VII's commands. *Id.* at 101-02, 103 S.Ct. at 2902-03. If ERISA were interpreted to preempt entirely the New York law with respect to covered benefit plans, the EEOC would be unable to refer claims to the state agency, thereby frustrating the goal of encouraging joint state and federal enforcement of Title VII. *Id.* at 102, 103 S.Ct. at 2902. Such a disruption of the enforcement scheme contemplated by Title VII would, in terms of section 514(d), "modify" and "impair" federal law. *Id.* Thus, the exception to preemption provided by section 514(d) would apply.

On the other hand, the Court explained that preemption would not impair Title VII within the meaning of section 514(d) where a state law prohibits employment practices that are lawful under Title VII. *Id.* at 103, 103 S.Ct. at 2903. The court could not "see how federal law would be impaired by preemption of a state law prohibiting conduct that federal law permitted." *Id.* at 103-04, 103 S.Ct. at 2903. Recognizing that its interpretation of section 514(d) as requiring partial preemption of state fair employment laws might cause certain practical problems, the Court noted that courts and state agencies would have to determine whether employment practices are prohibited by Title VII rather than considering whether they are unlawful under a broad state law. *Id.* at 105-06, 103 S.Ct. at 2904-05. If the challenged practices are not prohibited by Title VII, the state law will be superseded and the agency will lack authority to act. *Id.* at 106, 103 S.Ct. at 2904.

If the challenged employment practice in this case were governed by Title VII, this court would simply apply the *Shaw* approach and determine whether such a practice is prohibited by Title VII. But because Combs' claim is one for age discrimination, a matter not falling within Title VII, the court must first decide whether the analysis of *Shaw* applies with equal force in an age discrimination case.

Under the ADEA, like Title VII, a plaintiff in a deferral state such as Illinois may not file a discrimination charge with the EEOC until the charge is first filed with the appropriate state agency and either: (1) 60 days has elapsed or (2) the state agency terminates its proceedings. *Kaimowitz v. Board of Trustees of the Univ. of Illinois,* 951 F.2d 765, 766 (1991) (citing 29 U.S.C. § 633(b)). Of course, because of a workshare agreement between the IDHR and the EEOC, a plaintiff need not first file with the state agency. *Kaimowitz,* 951 F.2d at 766. Under the workshare agreement, the IDHR has given up its opportunity to hear first a plaintiff's age discrimination claim. *Id.* Such workshare agreements also exist between the IDHR and EEOC in the Title VII context. *See Hong v. Children's Mem'l Hosp.,* 936 F.2d 967, 970-71 (7th Cir.1991).

It is apparent that the statutory scheme of the ADEA, which calls for an interplay between the state and federal governments in assessing the viability of age discrimination claims, is very similar to that of Title VII. *Cf. McKennon v. Nashville Banner Publ'g Co.,* —— U.S. ——, ——, 115 S.Ct. 879, 884, 130 L.Ed.2d 852 (1995) (ADEA and Title VII not only share common substantive features but also share the common purpose of eliminating discrimination in the workplace). It was this very interplay that the Supreme Court found to be key to its holding in *Shaw.* Thus, the court finds that the policies under-

lying the Supreme Court's analysis in *Shaw* carry equal weight in the context of the ADEA. Therefore, the only remaining task is to determine whether Combs' claim brought under section 2–102(A) is prohibited by the ADEA. If it is, then section 514(d) of ERISA excepts it from preemption.

The answer to that question is yes. The ADEA clearly prohibits an employer from "discriminat[ing] against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). Combs' claim before the HRC is that he was discriminated against based on his age when Barber–Colman refused to give him severance pay but gave it to other similarly situated discharged employees. Such conduct, if proven, would violate section 623(a)(1). Consequently, applying *Shaw*, section 514(d) excepts from preemption Combs' claim under section 2–102(A) of the Act.

Barber–Colman contends the Act prohibits actions that are otherwise legal under the ADEA, pointing to section 623(f)(2)(B), which provides that it is not unlawful for an employer to observe the terms of a "bona fide employee benefit plan." Barber–Colman argues that because the Act does not contain an exemption for employee benefit plans it could be unlawful under the Act to follow the terms of the severance plan even though it would be lawful to do so under the ADEA.

This argument fails, however, as the claim in the HRC does not allege that Barber–Colman discriminated against Combs by following the terms of its severance plan. Nor does Combs allege the terms of the plan are discriminatory in and of themselves. Rather, Combs' claim is that the terms of the severance plan would apply to him but for Barber–Colman's discriminatory decision not to provide him with severance pay under the plan. Therefore, the difference between the Act and the ADEA is of no consequence under the facts as alleged by Combs in the HRC.

Lastly, the court considers the principal cases relied on by Barber–Colman to be distinguishable. In *Van Camp v. AT & T Info. Sys.*, 963 F.2d 119 (6th Cir.1992); *Barbagallo v. General Motors Corp.*, 818 F.Supp. 572 (S.D.N.Y.1993); and *Dean v. Jet Serv. West, Inc.*, 782 F.Supp. 498 (S.D.Cal.1991) the various courts, as to ERISA preemption, only addressed the question of whether the particular plaintiff's claims were sufficiently related to ERISA to impose preemption. While that inquiry is a necessary threshold step in deciding whether ERISA preemption ought to apply, *see Shaw*, 463 U.S. at 96, 103 S.Ct. at 2899, it is not at issue here. Defendants do not even challenge, nor does it seem they could reasonably, that Combs' claim of age discrimination sufficiently relates to an employee benefits plan. Accordingly, *Van Camp, Barbagallo* and *Dean* are not applicable to the issue presented here.[4]

### CONCLUSION

For the foregoing reasons, the court grants defendants' motion to dismiss Barber–Colman's amended complaint for declaratory judgment and dismisses this cause in its entirety.

4. This is further born out by the absence of reference to *Shaw* in either *Van Camp* or *Dean*. As for *Barbagallo*, Shaw is only cited once and then only after the court noted that the parties agreed that the plaintiff's claim under New York law would be preempted "if the severance pay provisions are covered by ERISA." 818 F.Supp. at 575. Moreover, this further evidences that the issue present here, whether section 514(d) excepts ERISA preemption, was not raised in *Barbagallo* as it apparently was agreed by the parties there that it did not.